UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRICK DESHAWN MOSS,

        Petitioner,

v.                                     CASE NO. 12-14570

JEFFREY WOODS,                   PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE

        Respondent.
_____/

## OPINION AND ORDER
## DENYING THE HABEAS CORPUS PETITION,
## DENYING A CERTIFICATE OF APPEALABILITY, AND
## GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

This matter has come before the Court on a *pro se* amended habeas corpus petition under 28 U.S.C. § 2254. State prisoner Demetrick Deshawn Moss ("Petitioner") is challenging his convictions for second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. The amended habeas petition alleges as grounds for relief that: (1) the prosecuting attorney on Petitioner's case did not include known *res gestae* witnesses on her witness list and did not assist Petitioner in producing the witnesses; (2) defense counsel was ineffective for failing to ask the prosecutor for assistance in securing critical *res* gestae witnesses; (3) there was insufficient evidence to support Petitioner's murder conviction; (4) Petitioner is entitled to a new trial on newly discovered evidence that an eyewitness saw the victim's friend accidentally shoot the victim; (5) trial and appellate

counsel failed to investigate potential witnesses to the crime; and (6) Petitioner is actually innocent and entitled to a new trial on the basis of evidence that someone other than Petitioner accidentally shot the victim. Respondent Jeffrey Woods urges the Court through counsel to deny the petition on the basis that one of Petitioner's claims is procedurally defaulted and that none of Petitioner's claims have merit. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

## I. Procedural History

Petitioner was charged in Wayne County, Michigan with first-degree (premeditated) murder, felon in possession of a firearm, and felony firearm. He was tried jointly with his brother Derek Moss in Wayne County Circuit Court. Derek chose to have a jury decide his case, but Petitioner opted to have the trial judge decide his case.

The charges against the two Moss brothers arose from the fatal shooting of Cardell Lewis ("the victim") in Detroit on September 21, 2008. The main evidence against Petitioner at trial

> was the testimony of Rodney Maudlin, who testified that he was with the victim when the two of them were approached by defendant and defendant's brother, Derek Moss. Defendant was carrying a pistol, accused Maudlin and the victim of stealing his narcotic sales, and struck Maudlin in the head with the gun. As Maudlin and the victim fled in different directions, Maudlin heard four gunshots and then saw defendant jump into Derek's Jeep and flee the area. The victim was thereafter found in a nearby alley. He died from a single gunshot wound. Defendant did not dispute firing his weapon during the episode, but claimed that he did so only toward the ground in self-defense, because Maudlin and the victim were chasing him and Maudlin was shooting at him.

2

*People v. Moss*, No. 293428, 2010 WL 4628697, *1 (Mich. Ct. App. Nov. 16, 2010) (unpublished).[1]

The forensic pathologist testified that the victim was shot in the back of his right thigh, that it was a life-threatening injury, and that the manner of death was homicide. There was other evidence that both Petitioner and Derek Moss left the State of Michigan and evaded the authorities for a time after the shooting. After both men were arrested in separate incidents, Petitioner tried to communicate with Derek Moss and suggest to Derek that he pretend not to know anything about the shooting. Later, Petitioner attempted to make a deal with the authorities and when that did not work, he tried to have a few people convince Mauldin not to testify at Petitioner's and Derek's trial.

On July 7, 2009, the trial court found Petitioner guilty of second-degree murder, as a lesser-included offense to first-degree murder, and guilty as charged on the firearm counts. On July 28, 2009, the trial court sentenced Petitioner to two years in prison for the felony-firearm conviction, followed by concurrent terms of forty to sixty years in prison for the murder conviction and three to ten years for the felon-in-possession conviction.

In an appeal as of right, Petitioner argued that: (1) the prosecutor failed to list all *res gestae* witnesses on her witness list and did not provide reasonable assistance in producing those witnesses; (2) defense counsel was ineffective for failing to request the

---

[1] Rodney spelled and pronounced his last name as "Mauldin" when he testified at trial. (6/24/09 Trial Tr. at 90-91.) The Court therefore will use that spelling in this opinion and refer to Rodney as "Mauldin."

3

prosecutor's assistance in securing critical witnesses; and (3) there was insufficient evidence at trial to support the murder conviction. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions. *See id.* On May 24, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Moss*, 489 Mich. 932 (2011) (table).

On or about October 31, 2011, Petitioner filed a motion for an evidentiary hearing on newly discovered evidence from someone named Michael Smith, who claimed to be an eyewitness to the shooting. The state trial court denied Petitioner's motion, *see People v. Moss*, No. 09-003073-01-FC, Opinion (Wayne Cty. Cir. Ct. Sept. 12, 2012), and the State's appellate courts denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Moss*, No. 314791 (Mich. Ct. App. Sept. 23, 2013) (unpublished); *People v. Moss*, 495 Mich. 917 (2013) (table).

Meanwhile, on October 15, 2012, Petitioner filed his first habeas corpus petition in which he raised the three issues that he presented to the state courts in his appeal of right. On November 28, 2012, the Court summarily dismissed the habeas petition on the basis that the petition was barred by the habeas statute of limitations, 28 U.S.C. § 2244(d). *See* ECF No. 6. Petitioner appealed the Court's decision, and on January 14, 2014, the United States Court of Appeals for the Sixth Circuit vacated this Court's judgment and remanded the case for further proceedings. *See Moss v. Woods*, No. 13-1038 (6th Cir. Jan. 14, 2014) (unpublished).

Petitioner then filed a motion to amend his habeas petition, ECF No. 15, and an amended habeas petition, ECF No. 16, which included the three claims that Petitioner

4

raised in his initial habeas petition and the following additional issues: (4) Petitioner is entitled to a new trial on newly discovered evidence from Michael Smith that Mauldin accidentally shot the victim; (5) his trial and appellate attorneys were ineffective for failing to investigate evidence that several potential witnesses were present at the crime scene; and (6) he is entitled to a new trial on the basis of actual innocence, that is, Michael Smith's affidavit that he saw Mauldin accidentally shoot the victim. The Court granted Petitioner's motion to amend and re-opened this case. *See* ECF No. 17.

After Respondent filed a response to the petition, ECF No. 20, Petitioner moved to amend his habeas petition a second time, ECF No. 32, but he did not list any new constitutional claims in his motion, and he admitted that he had not exhausted state remedies for the new claims he sought to add to his habeas petition. The Court therefore denied Petitioner's motion. *See* ECF No. 33. Petitioner appealed the Court's denial of his second motion to amend, but the Sixth Circuit Court of Appeals dismissed the appeal for lack of jurisdiction. *See Moss v. Woods*, No. 16-1085 (6th Cir. Mar. 3, 2016) (unpublished). The case is now ready for an adjudication of the six claims raised in Petitioner's amended petition.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the

writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

6

'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Analysis

#### A. The Alleged Failure to List all *Res Gestae* Witnesses (claim one)

Petitioner alleges that the prosecutor did not include all known *res gestae* witnesses[2] in her witness list and also failed to provide him with reasonable assistance in producing the witnesses so that he could support his claim of self-defense. Petitioner further alleges that the prosecutor's omissions deprived him of his right to present a defense and his right to confront the witnesses against him.

Petitioner raised his claim as a state-law argument on direct appeal from his convictions. He maintained that the prosecution did not comply with Mich. Comp. Laws § 767.40a(1), which requires the prosecutor to attach a list of all known *res gestae* witnesses to the criminal information, and Mich. Comp. Laws § 767.40a(5), which requires the prosecutor to provide reasonable assistance in locating and serving process on a witness. The Michigan Court of Appeals reviewed Petitioner's claim for "plain

---

[2] "A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *People v. Hadley*, 67 Mich. App. 688, 690 (1976).

error" because Petitioner did not preserve his claim for appellate review by raising the claim in the trial court.[3] The Court of Appeals then determined that Petitioner had failed to establish a plain error because the prosecutor was not required to identify the unknown people who had gathered at the crime scene, but had not witnessed the crime, and because Petitioner failed to request any assistance in locating witnesses.

The prosecutor's alleged failure to comply with Mich. Comp. Laws § 767.40a does not warrant habeas relief because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of [a habeas court's] review." *Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011).

Petitioner's contention that the prosecutor's omissions violated his constitutional rights to present a defense and to confront the witnesses against him also fails. Petitioner testified that seven or eight people were present before the shooting and that he knew two of the people, in addition to the victim. (6/30/09 Trial Tr. at 75.) Nevertheless, if he

---

[3] Because the state court reviewed Petitioner's claim for "plain error," Respondent argues that Petitioner procedurally defaulted his claim. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It "is not a jurisdictional matter," *id.*, and analyzing whether Petitioner's claim is procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore "cut[s] to the merits here." *Id.*

thought that the two witnesses whom he knew and whom he identified at trial as "Little Jeremy" and "D.J." could support his defense, he could have called them himself and produced them as defense witnesses.

Mauldin, moreover, testified that nobody else was around when Petitioner and Petitioner's brother approached Mauldin and the victim. (6/24/09 Trial Tr. at 176-77.) Other witnesses testified that there were a lot of people at the crime scene, but that was after the shooting, and there is no indication in the record that the witnesses would have provided testimony favorable to the defense. The victim's mother, for example, testified that there were "a lot of people" in the area, but she claimed that the people were saying the Moss brothers shot her son. (6/23/09 Trial Tr. at 25-27, 48, 50-51.)

An EMS specialist also testified that there was a large crowd at the scene, but he arrived at least nine minutes after being dispatched to the scene. (*Id.* at 54-55, 58.) Finally, Police Officer Darnelle Caddell testified that, although twenty to thirty people were present when she arrived on the scene, she asked the crowd whether anyone had seen anything, and Mauldin was the only person who raised his hand and said that he saw everything. Mauldin then told her that Petitioner shot his friend and that Derek Moss was the driver. (6/29/09 Trial Tr. at 107, 111-13.)

The Court concludes that there were no *res gestae* witnesses for the prosecutor to list or produce, other than Mauldin, who did testify. Even if additional people were present during the shooting, the transcript of trial indicates that the testimony would not have helped Petitioner's defense. Therefore, Petitioner's contention that he was denied

9

his right to present a defense and to confront the witnesses against him lacks merit. And, as explained above, his state-law claims are not cognizable on habeas review.

### B. Trial Counsel (claim two)

Petitioner alleges next that his trial attorney was ineffective for failing to ask the prosecutor for assistance in securing critical *res gestae* witnesses. Petitioner asserts that, because defense counsel did not request assistance, there was no court order to produce and interview the witnesses so that Petitioner could develop his theory of self-defense or actual innocence.

The Michigan Court of Appeals found no merit in Petitioner's claim on direct appeal because there was no basis for concluding that additional witnesses existed and because the prosecution had no affirmative duty to search for evidence to help the opposing party's case. The Court of Appeals concluded that any request for assistance would have been futile.

"[C]learly established federal law here is *Strickland v. Washington*, [466 U.S. 668 (1984)]." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Under *Strickland*, a habeas petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

Furthermore, review of an ineffective-assistance-of-counsel claim is "doubly deferential" under AEDPA

> because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

As noted in the previous section of this opinion, there is no credible evidence in the record that anyone other than Petitioner, Derek Moss, and Mauldin were present when the victim was shot. And, under state law, a prosecutor has no duty "to locate, endorse, and produce unknown persons who might be res gestae witnesses . . . . " *People v. Burwick*, 450 Mich. 281, 289 (1995). Therefore, defense counsel was not ineffective

for failing to seek the prosecutor's assistance in locating and producing additional witnesses. As the Michigan Court of Appeals recognized, a request for assistance would have been futile, and attorneys are not required to file futile motions to avoid a claim of ineffective assistance. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). Petitioner's claim lacks merit, and the state court's rejection of the claim was objectively reasonable.

### C. Sufficiency of the Evidence (claim three)

Petitioner asserts that there was insufficient evidence at trial to support his murder conviction because the prosecutor failed to prove all the elements of the crime. The main basis for Petitioner's claim is that Mauldin was an admitted liar. Petitioner points out that Mauldin admitted at trial that he lied to the police about whether he was selling drugs before the shooting and whether the dispute between Petitioner and the victim was about drugs. The Michigan Court of Appeals, however, adjudicated Petitioner's claim on the merits on direct appeal and concluded that the evidence was sufficient to sustain Petitioner's second-degree murder conviction.

#### 1. Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship,* the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court has made clear that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (*per curiam*). First, it is the responsibility of the trier of fact to decide what conclusions should be drawn from evidence admitted at trial. *Id.*

> And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, —— ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.*; *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (stating that, because both *Jackson* and AEDPA applied to the petitioner's claim, the law commanded deference at two levels: deference to the trier-of-fact's verdict and deference to the state court's consideration of the trier-of-fact's verdict, as dictated by AEDPA).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Petitioner was convicted of second-degree murder. In Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996).
>
> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980).

*People v. Goecke*, 457 Mich. 442, 463-64 (1998).

### 2. Application

The elements in dispute at Petitioner's trial were whether Petitioner caused the victim's death, and if he did, whether he had the requisite intent for murder and whether he was justified in killing the victim. The Michigan Court of Appeals summarized the relevant evidence at trial as follows:

> In this case, Maudlin testified that defendant confronted him and the victim and accused them of invading defendant's drug territory while brandishing a 40-cailiber Glock semiautomatic pistol. According to Maudlin, defendant hit him in the head with the pistol, after which Maudlin and the victim ran in different directions. Seconds after fleeing, Maudlin heard four continuous gunshots. He then saw defendant emerge from the direction of where the victim had fled and flee into his brother's vehicle. The victim died from a single gunshot wound that entered the back of his right thigh and perforated his femoral artery. A blood trail led from the front of 1849 Edsel to the area where the victim died. Two .40-caliber spent shell casings were recovered from the curb in front of 1849 Edsel and a third casing was located in the driveway. After the shooting, defendant left the state and evaded law enforcement for more than four months.

*Moss*, 2010 WL 4628697, at *3.

14

Although Mauldin equivocated at trial as to whether he actually saw Petitioner chasing the victim, a reasonable trier of fact could have inferred from Mauldin's testimony that Petitioner shot and killed the victim. Petitioner, in fact, admitted at trial that he fired a gun backwards in the direction where Mauldin and the victim were standing.

Petitioner nevertheless claims that there was no evidence of malice on his part, and, at trial, he claimed to be justified in shooting his gun because Mauldin had stuck a gun in his face and he thought that Mauldin was trying to shoot him. The trial court, however, discredited Petitioner's version of the facts for a few reasons. First, the court noted that, even though Petitioner claimed his and Derek Moss's reason for going to the area where Mauldin and the victim were located was to make crack cocaine sales, Derek remained in his vehicle when they arrived at the location. The trial court also pointed out that Petitioner's initial defense was that he and Derek Moss were not present during the shooting, but the defense changed to one of self-defense after it appeared that Mauldin could not be dissuaded from testifying. Finally, the court noted that Petitioner's flight from the city reflected a consciousness of guilt. (7/7/09 Trial Tr. at 19.)

A rational trier of fact could have concluded from the evidence, as the trial court did, that Petitioner caused the victim's death and that the victim died as a result of the wound Petitioner inflicted on him. A rational trier of fact also could have concluded that Petitioner intended to do great bodily harm or that he intended to create a high risk of death or great bodily harm knowing that death or such harm would be the likely result of

his action. Finally, a rational trier of fact could have concluded that the killing was not justified or excused. *See id.* at 20.

Although Petitioner claims that Mauldin was untruthful, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court," because "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The Court concludes that the evidence was sufficient to find Petitioner guilty of second-degree murder. Thus, the state appellate court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Jackson*. Habeas relief is not warranted on Petitioner's challenge to the sufficiency of the evidence.

### D. Newly Discovered Evidence; Actual Innocence (claims four and six)

The fourth habeas claim alleges that Petitioner is entitled to a new trial on the basis of newly discovered evidence that Michael Smith saw Mauldin accidentally shoot the victim. The sixth habeas claim similarly alleges that, in light of Michael Smith's affidavit, Petitioner is actually innocent of the crimes for which he was convicted and sentenced.

Michael Smith avers in his affidavit that he witnessed the shooting in question and that Mauldin had a gun. Smith goes on to say that, when Petitioner punched Mauldin in the face, Mauldin reacted by pulling the trigger on his gun and that action caused a stray

bullet to hit the victim in the thigh. Smith claims that he left the scene because he was on parole and did not want to be at the center of a chaotic situation. He also claims that he did not have the strength to go to the police station for questioning and that he did not want to get involved. He nevertheless asserts that he does not want an innocent man to be punished.

According to Petitioner, Smith's affidavit completely changes the dynamics of his case and shows that Mauldin fabricated his trial testimony to shift blame for the shooting from himself to Petitioner. The state trial court, however, rejected Petitioner's claim on post-conviction review. The court stated that, even assuming Smith's affidavit is newly discovered evidence, it would not make a different result probable on retrial, given Mauldin's testimony, which the court found credible.

This Court declines to grant relief on the basis of Petitioner's fourth and sixth claims because "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* "In the new trial context, motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417.

Smith's statements are suspect because they were obtained without the benefit of cross-examination and an opportunity to make a credibility determination. In addition, neither Smith, nor Petitioner, has explained how the two of them happened to come in contact with each other eighteen months after Petitioner's trial. Smith, moreover, has not said that he is willing and able to testify in Petitioner's behalf if this Court were to order the State to grant Petitioner a new trial.

Furthermore, as in *Herrera*, the evidence at trial strongly suggests that Petitioner is guilty of the murder. Petitioner has not met the "extraordinarily high" threshold needed for establishing a claim of actual innocence. *See id.* at 417. The Court therefore declines to grant relief on Petitioner's fourth and sixth claims.

### E. Trial and Appellate Counsel (claim five)

Finally, Petitioner claims that his trial and appellate attorneys were ineffective for failing to investigate evidence that several potential witnesses, including Michael Smith, were present at the crime scene. Petitioner asserts that counsel should have used reasonable diligence to discover potential witnesses and to produce Michael Smith as a witness because Smith's testimony would have resulted in a different outcome.

Under *Strickland*, attorneys have

> a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 691. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or

18

innocence," *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005), and "[t]he failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010).

Here, there was no credible evidence that anyone other than Petitioner, Derek Moss, and Mauldin witnessed the shooting. As for Michael Smith, Petitioner asserts that he did not receive Smith's affidavit until eighteen months after his convictions, and Smith claims in his affidavit that he left the crime scene and did not want to get involved. It therefore appears that Petitioner's attorney could not have known about Smith and even if he had investigated and discovered Smith, Smith in all likelihood would not have agreed to testify in Petitioner's defense. The trial court, moreover, was the factfinder in Petitioner's case, and it stated on post-conviction review that Smith would not have made a different result probable.

The Court concludes that counsel's performance was not deficient and that the allegedly deficient performance did not prejudice the defense. Habeas relief, therefore is not warranted on Petitioner's fifth claim.

## IV. Conclusion

The state-court orders and opinions in this case were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The orders and opinions clearly were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The Court therefore DENIES the petition for writ of habeas corpus.

19

## V. Certificate of Appealability

Before Petitioner may appeal this Court's decision, a district or circuit judge must issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because he was permitted to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: OCT 19 2016